Commonwealth *v.* Atherton, Appellant.

Argued September 30, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Harry J. Gerber,* with him *Robert V. Moser,* for appellant.

*H. F. Bonno,* Assistant District Attorney, with him *Robert M. Fortney,* District Attorney, for appellee.

OPINION BY CUNNINGHAM, J., November 10, 1937:
This appeal by the defendant is from his conviction

under an indictment charging him with having begotten a female bastard child on the body of Marian Reichley, in the latter part of April, 1936. The question here involved is raised by the first assignment which charges that the trial judge erred in refusing appellant's first point for charge, reading: "Under all the evidence, the verdict must be for the defendant on the charge of bastardy."

Under the Commonwealth's own evidence the point should have been affirmed. It was based upon the proposition that the evidence upon the record did not rebut the legal presumption that the child referred to in the indictment was legitimate. The Commonwealth proved that the mother of the child was married to one Reichley (whose first name does not appear from the evidence) on January 28, 1930; that they lived for several years as husband and wife with Mrs. Reichley's mother, Elizabeth Best, in the Borough of Northumberland, Pa.; that a son (Samuel) was born to them on May 1, 1931; that they separated sometime in 1932 and were not living together during the period within which the child whose legitimacy is involved in this case was begotten, i. e., sometime between the middle of April and the middle of May, 1936; but that the husband of the child's mother was, during all of that period, living in the same borough and had not been divorced from her.

The principles of law applicable to the trial of a criminal charge of bastardy under such circumstances were fully considered and stated by this court in the recent cases of *Com. v. DiMatteo,* 124 Pa. Superior Ct. 277, 188 A. 425, and *Com. v. Gantz,* 128 Pa. Superior Ct. 97, 193 A. 72, and need only be referred to now.

Marian Reichley was not competent to testify to non-access by her husband and no attempt was made to have

her do so; her testimony was properly restricted to her alleged criminal intercourse with appellant.

The crucial question, however, is whether the Commonwealth introduced evidence which would sustain a finding that it had met the burden imposed upon it, under all the authorities, of rebutting the legal presumption of legitimacy by showing beyond a reasonable doubt that Marian Reichley's husband did not have access to her during the period within which the child must have been begotten.

An examination of its evidence demonstrates that it not only failed to meet that burden but, on the contrary, established the possibility of access so clearly that it was not entitled to go to the jury upon its charge of bastardy.

The witnesses by whose testimony the Commonwealth endeavored to show non-access were Mrs. Best, above mentioned, and several neighbors. After relating that her daughter and the latter's husband had lived with her for more than a year after their marriage, and that their young son and his mother were still living at her home at the time of the trial, Mrs. Best, referring to the separation between her daughter and son-in-law, testified: "Ever since he has left, I denied him the house. Never to my knowledge has he entered my home." Under cross-examination, Mrs. Best said she made her daughter's husband leave in the summer of 1931, when their son was about three months old, and the force of her prior statement was weakened by the admission, "Lately he came to pay me—we had him arrested for support for Sam, and he came to pay me the money once in a while."

Mrs. Stahl, a neighbor, testified she had not seen Mr. Reichley around the Best home or in the neighborhood since his separation from his wife, but that she did not "watch anybody closely."

Mrs. Smeigh, another neighbor, said she had not seen

Reichley going into or coming out of the Best house during the year 1936, but had seen him passing by, driving a truck.

Mrs. Manning who lives next door to Mrs. Best testified: "Q. During the months from January, 1936, to January, 1937, have you seen her [Mrs. Reichley's] husband in the neighborhood where she lives? A. Only outside, talking to the little boy. Q. To the little boy? A. Yes. Q. Did you see him going in or coming out of their home? A. No, sir. Q. And at the time that you saw him talking to the little boy, where was that? A. Right outside of my place. Q. Outside of your place? A. Yes, sir. Q. On the street? A. Yes, sir."

An excerpt from the testimony of Mrs. Ferrari, also living next door, reads: "Q. During the year from January, 1936, to January, 1937, have you seen [Reichley] in that neighborhood? A. To talk to the little boy on the outside, and he speaks once in a while to my husband."

Thus far we have referred only to the testimony introduced by the Commonwealth; that on behalf of the defendant upon this issue afforded the Commonwealth no help in meeting the burden imposed upon it.

Harry Bingman, residing near the home of Mrs. Best and Mrs. Reichley, testified that in the spring of 1936 he saw Mrs. Reichley and her husband standing and talking at the curb in front of her home, and that Reichley stopped there "lots of times on account of his little son." There was, therefore, no conflict in the evidence relating to the possibility, to say nothing of the probability, of access in this case.

It is too plain for argument that the law will not permit the presumption of legitimacy to be overthrown and a child bastardized by such evidence.

Judgment reversed.