## Commonwealth v. Tucker

*Robert J. Cassidy*, for Commonwealth.

*Gerard Harry Isaacson*, for defendant.

WOLFE, J., March 7, 1961.—On July 25, 1960, Jesse Tucker was ordered to pay the sum of $75 per month for the support of his wife, Agnes Tucker, and one child, born Yvonne Tucker and also known as Arlett Louchart. After obtaining a divorce from his wife on November 25, 1960, Tucker filed a petition to vacate the support order. There is no question that he no long-

er owes support to the wife he divorced, but there is a question about his obligation to the child. He claims that she is not and cannot legally be his daughter, because her mother was married to another man at the time she was born.

The mother, Agnes Tucker, was first married to one Marcel Louchart, their marital domicile being Ebensburg, Cambria County. About January, 1944, she left her husband and went to Detroit, Mich., with Jesse Tucker where they took up residence together. She remained in Detroit with Jesse Tucker until after the child was born on April 8, 1948. He says her life with him was intermittent, being interrupted by returns to Pennsylvania in 1944 for several months, and again from April 1947 until November 1947. He is uncertain about the date she left him in 1947, saying that they remained together until "the warm weather came," and again saying, "She left about April, that is when warm weather comes." On the other hand, Mrs. Tucker asserts that she remained with Jesse Tucker from 1945 until after the child was born on April 8, 1948, leaving to return to Pennsylvania in or about June of that year.

Neither party disputes the fact that they were living together in the Detroit area on April 8, 1948, when the child was born. Mr. Tucker chose the name, Yvonne, for the child, and the information appearing on the birth certificate was apparently given to the attending doctor at the time of birth while Jesse Tucker was present or nearby. On the birth certificate, the child appears as "Yvonne Tucker."

In or about June 1948, Mrs. Tucker, who was still legally Mrs. Marcel Louchart, returned to Cambria County, Pa., and resumed living with her legal husband. At that time, she began to call the child Arlett Louchart because, as she says, she was again living with her legal husband. She lived with Marcel Louch-

art for the next five years and then again separated from him. On July 12, 1955, Louchart divorced her, and she married Jesse Tucker on August 31, 1956. That marriage, too, is now dissolved.

Jesse Tucker maintains that he should not be required to support this child. He admits that he could be the father but says that others also could be, and he states it as his belief that he is not the father. His main argument, though, is that the child was born while Agnes Tucker was the legal wife of Marcel Louchart, and must, therefore, be considered the offspring of that marriage.

To meet that argument, Agnes Tucker testified, over objection, that her legal husband, Marcel Louchart, did not have access to her at or about the time the child was conceived. The circumstances under which Jesse Tucker and the then Agnes Louchart were living together as man and wife in a community several hundred miles from Cambria County, Pa., the admission by Jesse Tucker that he could be the father of this child, the complete absence of testimony from him or anybody that Louchart was near or around his wife at any time during 1947, the absence of Louchart on overseas military duty from June 4, 1946, to July 3, 1947, and the name "Yvonne Tucker" on the birth certificate, all corroborate the positive statement of Agnes Louchart, later Agnes Tucker, that Jesse Tucker is the father of the child and that Marcel Louchart had no access to her at the time of conception. Against this evidence, Jesse Tucker's vague statement that Agnes left him in April 1947, "when the warm weather came." and did not return until November is unconvincing. But, was Agnes Tucker competent to testify to the nonaccess of her legal husband, Marcel Louchart?

Every child born in wedlock is presumed to be legitimate: 7 Am. Jur. Bastards, §14. If Agnes Louchart, later Agnes Tucker, could not testify that her husband

Marcel Louchart, had no access to her, the presumption that this child is the child of their marriage would stand.

The problem is important enough to suggest a backward glance along the path of precedent. At common law, if the husband was within the four seas, that is, within the King's dominion, the presumption of legitimacy was conclusive, unless the husband's impotence could be proven. Although it served the laudable purpose of discouraging questions of illicit connection and spared children the ignominy of the bar sinister, the four seas rule was neither practical nor realistic. In due time, the common law recognized that the legal presumption of the husband's access might be contradicted by other proof: 7 Am. Jur. Bastards, §14. In 1734, Lord Hardwicke went farther by permitting a mother to testify to adultery between herself and another in a paternity issue. At the same time, he cautioned that the mother's sole and uncorroborated testimony of nonaccess of the husband would not be sufficient to bastardize a child. Lord Mansfield reformed this rule in 1777 by forbidding either husband or wife to testify to nonaccess of the husband and thus bastardize a child. This declared incompetency of either to testify to nonaccess was based upon considerations of decency, morality and policy: 7 Am. Jur. Bastards, §21.

Most American jurisdictions, including Pennsylvania, follow this latter rule. "Moreover, our public policy is so firmly established and so strong that the courts have repeatedly declared that 'non-access cannot be testified to by either the husband or wife in order to overcome the presumption of legitimacy' ": Cairgle v. American R. & S. S. Corp., 366 Pa. 249, at 256.

"The presumption of legitimacy is, however, still one of the strongest known to the law and can be overcome only by proof of facts establishing non-access or

that the husband was impotent, or had no sexual intercourse with his wife at any time when it was possible in the course of nature for the child to have been begotten": page 255.

While that case emphatically expressed the law relating to presumption of legitimacy and incompetency to testify to nonaccess, it found the children of a married woman *to be illegitimate in spite of her testimony of access by her husband.* Her testimony, intended to prove legitimacy, apparently was considered corroborative of other testimony showing nonaccess of her husband.

". . . A wife is competent to prove the fact and time of her marriage, the date and place of birth of her child, the name she gave the child, the fact of access, her separation from her husband, her own adultery, where she and the child have lived, who supported the child, and any other independent facts affecting the question of legitimacy, even though some of those facts may result in establishing illegitimacy": Cairgle v. American R. & S. S. Corp., supra, page 257.

So, in Pennsylvania, a wife may testify to particulars of her life which will corroborate other evidence of nonaccess. This is more like Lord Hardwicke's rule than the absolute incompetency declared by Lord Mansfield. But there is something in this case which makes the rule of incompetency inapplicable. The testimony of Agnes Tucker, formerly Agnes Louchart, that Marcel Louchart did not have access to her at the time the child, Yvonne, was conceived does not bastardize the child. Agnes Tucker and Jesse Tucker were married subsequent to the birth of Yvonne and lived together as man and wife. Yvonne, their child, was legitimated by this marriage: Act of May 14, 1857, P. L. 507, 48 PS §167. Therefore, the testimony of her mother does not bastardize Yvonne: Schumacher's Estate, 41 D. & C. 100. On the contrary, it may pre-

serve her legitimacy, since it appears quite likely from the testimony that the first husband could assemble substantial proof of his nonaccess and thus exclude the child from the blessings and benefits of that marriage. If we now say that the mother is incompetent to testify to the nonaccess of her first husband at a time when she was living with, but not yet married to, her second, we might be placing the child in a vacuum between the two marriages, unable to claim the protection of either. The rule of incompetency to testify to nonaccess springs from the broader rule that children born in wedlock are presumed to be legitimate. It cannot be used here to close the mouth of a mother and prevent her proving that her daughter is the child of a marriage union formalized after the birth. The law of evidence will protect the legal status of a child and will encourage proof of its legitimacy.

We, therefore, enter the following

### Order

And now, March 7, 1961, Jesse Tucker is ordered to pay the sum of $35 per month for the support of his daughter, Yvonne Tucker, also known as Arlett Louchart.