**Birth Records**

KANE, *Attorney General*, February 19, 1975—You have asked whether the Department of Health has authority to promulgate regulations which would allow the child of a married woman to be registered on its birth certificate as the illegitimate child of another man, with his surname, when all of the following conditions are met:

1. Acknowledgment of the natural father by the mother.

2. Acknowledgment of the child by the natural father.

3. Permission from the mother's husband.

Provided, however, that if the mother's husband is notified by registered mail return receipt requested, sent to his last known address and he makes no response within ten days of receipt, or if the postal service is unable to effect delivery, his consent shall not be necessary to the registration.

You are hereby advised that the Department of Health can legally promulgate regulations to enact such policies.

## I. PRESENT POLICY

The Department of Health is authorized to specify what information should be included on a birth certificate, Vital Statistics Law of June 29, 1953, P.L. 304, sec. 204, 35 P.S. §450.204. At the present time, all children of married women must be registered at birth as the legitimate children of their mothers' husbands: Important Notice to Pennsylvania Hospitals and Physicians, Department of Health, Division of Vital Statistics, May 17, 1967. The legal basis for this policy is Attorney General's Informal Opinion No. 780, October 8, 1936. The then Attorney General stated that:

"There is a well established presumption to the effect that children born to a married woman are legitimate . . . Ordinarily, neither the husband nor the wife will be allowed to deny the legitimacy of their child . . . [Since] the Bureau of Vital Statistics is in no position to take testimony and decide whether the presumption has been adequately rebutted . . . the child should be shown upon the birth certificate as legitimate and the mother's husband named as its father."

The opinion, then, rests upon two grounds: first, that the presumption of legitimacy may not be rebutted except in the course of some kind of a formal hearing; and second, that the presumption may not be rebutted by the testimony of the mother or her husband in any case.

The continuing validity of this opinion has in recent times been called into question. Changing social conditions have made it necessary to reevaluate the longstanding policy in this area. Marriages dissolve and new relationships are formed. It is understandable that in such cases a mother may want her child to bear the name of his or her natural father rather than the name of a man he or she may never see. In order to determine whether her wishes can be accommodated, however, it is necessary to reexamine the grounds upon which Opinion No. 780 is based.

## II. PRESUMPTION OF LEGITIMACY

Informal Opinion No. 780 rests in part upon the strength of the presumption of legitimacy, but the presumption of legitimacy rests in turn upon a set of assumptions concerning the legal and social consequences of being illegitimate.

In an earlier century, those assumptions might

have been accurate. "At common law, a bastard was not even entitled to a name unless he gained one by reputation.": Attorney General's Informal Opinion No. 780, at 3. In today's context of rapidly changing customs, mores and attitudes, however, the parties involved are better suited to know the attitudes of their social environment toward illegitimacy than is the government. They know, better than we, "what the neighbors will say," or whether they will say anything at all, and their judgment, at least at the administrative level, should prevail.

Nor is the legal status of the illegitimate child as bleak as it was in the past, at least where paternity has been established. Under the Crimes Code of December 6, 1972, P.L. 1482 (No. 334), sec. 1, 18 Pa.C.S. §4323, neglecting to contribute to the support of a child one has fathered is made a misdemeanor. The Supreme Court, in Gomez v. Perez, 409 U.S. 535 (1973), has gone so far as to hold that, under the Fourteenth Amendment's Equal Protection Clause, a State may not grant legitimate children a right to support from their father while denying it to illegitimate children.

In Gomez, the court cites its decision in Levy v. Louisiana, 391 U.S. 68 (1968), holding that a state may not create a right of action for the wrongful death of a parent while excluding illegitimate children from its exercise; and Weber v. Aetna Casualty & Surety Co., 406 U.S. 164 (1972), holding that illegitimate children must share equally with other children in workmen's compensation benefits for the death of a parent. The Supreme Court of Louisiana has recently held that, under the principles of these decisions, a child may recover for the death of her biological father even though she was

legally the legitimate child of her mother's husband: Warren v. Richard, No. 54258, June 10, 1974, 2 CCH Pov. L. Rep., ¶19,145. Another case, New Jersey Welfare Rights Organization v. Cahill, 411 U.S. 619 (1973), held that a state may not withhold welfare benefits from an otherwise eligible household merely because the children are illegitimates.

But the cases most likely to affect illegitimates are those which deal with their rights to receive Social Security benefits. In Jimenez v. Weinberger, 417 U.S. 628, 94 S. Ct. 2496 (1974), the Supreme Court held that illegitimate children could not be conclusively denied the opportunity to establish a claim to benefits for the disability of a parent. In Davis v. Richardson, 342 F. Supp. 588 (D. Conn., 1972), aff'd mem. 409 U.S. 1069 (1972), the court upheld a challenge to sections of the Social Security Act of August 14, 1935, 49 Stat. 623, 64 Stat. 492, as amended, 42 USC §§403(a), 416(h)(3), under which an illegitimate child received only residual death benefits upon the death of a parent—that is, whatever money was left after the spouse and legitimate children had received their maximum benefits allowed. Davis held that an illegitimate child must participate in those death benefits as though he is legitimate, providing that he had been supported or otherwise acknowledged by his father. Griffin v. Richardson, 346 F. Supp. 1226 (D. Md., 1972), aff'd mem. 409 U.S. 1069 (1972), faced the same issue with the same result. On the crucial issue of support then, a child may be as well off (or better) as the acknowledged out-of-wedlock child of a father who is present than as the legitimate son of his mother's husband, who may be absent.

In short, recent United States Supreme Court de-

cisions have gone far in securing rights for illegitimate children and in striking down State and Federal legislation that has relegated illegitimate children to the status of non-persons.[1] You are advised, therefore, that changes in public policy toward illegitimates are such that the presumption of legitimacy may be modified to reflect true facts for purposes of birth registrations under the conditions you have outlined. The legal effect of such registrations are subject, of course, to the limitations of the Vital Statistics Law of June 29, 1953, P.L. 304, sec. 810, 35 P.S. §450.810, discussed in part III of this opinion.

## III. THE NONACCESS RULE

The second reason given by the Attorney General's opinion for the present policy is the common law rule that in a suit where paternity is in issue, neither the husband nor the wife may testify to the nonaccess of the husband to the wife. The reasoning is that if a wife may not bastardize her child under oath in a courtroom, she should not be allowed to do it on a birth certificate.

Whatever may be the merits of that argument, the "non-access rule" itself has come under severe attack, and the present trend in the law is to move away from it or to abolish it entirely: 7 Wigmore, Evidence, §2063, criticizes both the legal origins

---

1. It should be noted that the Pennsylvania Legislature in recent years has removed from several statutes references to "bastards" and "illegitimates" and substituted the term "born out of wedlock." See, e.g., Act of June 17, 1971, P.L. 175 (No. 17), 48 P.S. §167; Act of June 17, 1971, P.L. 178 (No. 20), 20 P.S. §301.14, and Act of June 17, 1971, P.L. 179 (No. 21), 20 P.S. §1.7, since superseded by the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. §§101, et seq.

and the policy behind the rule, contending that it originated in an unsupported dictum of Lord Mansfield, and that it was adopted in England and the United States without careful analysis. The rule has been overturned by statute in England: Matrimonial Causes Act of 1950, 14 Geo. VI, c. 25, §32; and in Tennessee: St. 1955, March 15, c. 186, §6; and by the courts in the District of Columbia: Peters v. District of Columbia, 84 A. 2d 115 (D.C. Mun. Ap., 1951); in Mississippi: Moore v. Smith, 178 Miss. 383, 172 So. 317 (1937); in New Mexico: Melvin v. Kazhe, 83 N.M. 356, 492 P. 2d 138 (1971); and in New York: Oliver v. England, 264, N.Y.S. 2d 999 (1965).

In Pennsylvania, the rule came under attack in Commonwealth ex rel. Leider v. Leider, 210 Pa. Superior Ct. 433, 233 A. 2d 917 (1967). Judge Hoffman and President Judge Ervin in the Superior Court, and Justice Roberts in the Supreme Court, argued for its abolition. The court did not reach that point, since it was not necessary to dispose of the case, but modified the rule to allow the wife's testimony where she had subsequently married the putative father, and her testimony could not bastardize the child: Commonwealth ex rel. Leider v. Leider, 434 Pa. 293, 254 A. 2d 306 (1969), rev'g 210 Pa. Superior Ct. 433, 233 A. 2d 917 (1967).

Statutory provisions have also eroded the nonaccess rule. In those adoption cases where paternity becomes an issue because of the necessity for a married father's consent, Pennsylvania law provides that "The natural mother shall be a competent witness as to whether the presumptive father is the natural father of the child.": Adoption Act of July 24, 1970, P.L. 620 (No. 208), sec. 313, 1 P.S. §313. In divorce actions, the plaintiff is competent

to prove all the facts: Divorce Law of May 2, 1929, P.L. 1237, sec. 50, 23 P.S. §50, including non-access; Krick v. Krick, 39 Berks 76 (1946), although Williams v. Williams, 46 D. & C. 481, 59 Montg. 58 (1942), holds the contrary. Similar exceptions limit the application of the rule in many other States: 7 Wigmore, Evidence, §2063, n.13. Finally, the Revised Uniform Reciprocal Enforcement of Support Act of December 6, 1972, P.L. 1365 (No. 291), sec. 22, 62 P.S. §2043-24, does away with the rule altogether: "Husband and wife are competent witnesses and may be compelled to testify to any relevant matter . . . including parentage." While its provisions are not relevant in a support proceeding not brought under its terms, Commonwealth ex rel. Ranjo v. Ranjo, 178 Pa. Superior Ct. 6, 112 A. 2d 442 (1955), the act, which has been adopted in 50 states, clearly shows the direction in which the law is moving.

In view of the evident change occurring in this area of the law, it is appropriate for us to reconsider the earlier Attorney General's opinion and to decide which is the better rule. You are advised that the provisions of the nonaccess rule are not applicable to birth registrations. The rules which may be appropriate for a finding of fact in a trial are not appropriate here, especially where the rule, like the nonaccess rule, has fallen into disrepute and decay. A birth registration does not constitute prima facie evidence of paternity in any proceeding, such as a support proceeding, in which paternity is in issue, unless the alleged father is married to the child's mother: Vital Statistics Law of June 29, 1953, P.L. 304, sec. 810, 35 P.S. §450.810. Statements as to the paternity of the child by the mother or the

mother's husband are therefore acceptable for purposes of birth registration.

You are further advised that the provisions you have outlined for notice to the mother's husband are adequate for your purpose. When the rights of the presumptive father may be affected, even in the limited fashion contemplated by this procedure, it is essential that some effort be made to notify him of the proposed action. The notification provisions that you have submitted are identical to those prescribed for notice to an absent father in adoption proceedings: Adoption Act of July 24, 1970, P.L. 620 (No. 208), sec. 313, 1 P.S. §313. Personal service is not necessary in such cases; the parent must keep his whereabouts known or risk court proceedings affecting his rights: Adoption of Turner, 92 Montg. 186 (1969). The same level of protection for the husband in birth registrations is perfectly proper.

Birth registration in accordance with this option will not preclude a subsequent court challenge by a husband or child who believes that he has been adversely affected by the administrative record and who wishes to establish paternity in a court of law.

Consequently, you are advised that, under the conditions you propose, the Department of Health is empowered to promulgate regulations to allow children of married women to be registered as the illegitimate children of their natural fathers with the surname of the natural father.

Attorney General's Informal Opinion No. 780, October 8, 1936, is hereby rescinded insofar as it is inconsistent with this opinion.