Commonwealth ex rel. Savruk *v.* Derby, Appellant.

Argued March 20, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*C. George Milner*, for appellant.

*Stephen M. Karp*, with him *Ronald Ervais*, and *Becker, Fryman & Ervais*, for appellee.

OPINION BY HOFFMAN, J., September 22, 1975:

Appellant, putative father, contends that appellee did not make out a case of paternity because she failed to produce sufficient competent evidence to prove non-access by her husband.

Appellee and her husband, Michael Savruk, resided together in Hamilton, Ontario, Canada, until 1966, when the husband filed for divorce on grounds of his wife's adultery. At some time during 1967, according to appellee, she left Canada with appellant pursuant to appellant's promise to marry her after both parties received final divorce decrees. The couple took up residence at 1233 Randolph Street in Philadelphia. Except for a brief period in 1968, appellant and appellee lived together and, again according to appellee's witnesses, represented themselves as husband and wife.

Around the end of 1968, appellee became pregnant and on July 30, 1969, she bore a child. The appellee's hospital expenses were paid for by Blue Cross and Blue Shield under appellant's coverage. The child, a boy, was named Waldermar Derby New Van DeDroucker, Jr., after the appellant. Shortly thereafter, the couple asked two of their friends to attend the child's baptism and to be godparents to the child. Both godparents and a third friend of the couple stated that appellant admitted being the child's father on several occasions.

Appellee's divorce from her husband became final in February, 1970. At some point in May, 1970, appellant disclaimed paternity of the child, stated that the infant was too small to be his, and demanded that appellee leave his house. He refused to furnish any additional support for the child.

On November 18, 1970, appellee filed a petition for support for her child. A preliminary hearing was held before Judge SCHWARTZ, Philadelphia Court of Common Pleas, on March 18, 1971. At that time, the only evidence of non-access by appellee's husband was appellee's own testimony. Appellant's counsel objected and the hearing was continued until April 26, to enable appellee to present competent evidence on the issue of non-access. At that time, appellee presented three witnesses, none of whom knew Michael Savruk, but who testified that during the time they knew appellee they never saw her with her former husband. Although the action was initially brought as a criminal proceeding under the Penal Code[1],

---

1. Act of June 24, 1939, P.L. 872, §506, as amended, 1943, May 21, P.L. 306, §1; 1951, Sept. 28, P.L. 1543, §1; former 18 P.S. §4506; repealed by Act of Dec. 6, 1972, P.L. 1482, No. 334, §5, effective June 6, 1973. The instant case was submitted to the grand jury on June 15, 1971. On December 10, 1971, the grand jury returned true bills of indictment wherein appellant was charged with Fornication and Bastardy and Neglect to Support a Child Born out of Lawful Wedlock.

the parties agreed to proceed under the Civil Procedural Support Law[2], and the criminal charges were nolle prossed. On June 26, 1974, Judge CANUSO ordered the appellant to pay support in the amount of $15.00 per week. This appeal challenges that order.

The appellant states that "Pennsylvania cases are firm on the point that non-access of a woman's husband during the period of conception must be shown before a case of paternity is made out. *Commonwealth v. Fletcher*, 202 Pa. Superior Ct. 65 (1963) ; *Commonwealth v. Barone*, 164 Pa. Superior Ct. 73 (1949) ; *Commonwealth v. Carrasquilla*, 191 Pa. Superior Ct. 14 (1959)." There is no question that "[a] child born or begotten in wedlock is presumed to be legitimate, and neither the mother nor her husband can bastardize it by testifying to non-access." *Jane's Estate*, 147 Pa. 527, 531, 23 A. 892 (1892). See also, *Commonwealth v Ludlow*, 206 Pa. Superior Ct. 464, 214 A. 2d 282 (1965) ; *Commonwealth v. DiBonaventure*, 206 Pa. Superior Ct. 340, 213 A.2d 175 (1965) ; *Commonwealth v. Becker*, 168 Pa. Superior Ct. 69, 76 A.2d 657 (1950).[3]

However, the wisdom of a rule that makes incompetent the parties who possess the best evidence of access or non-access has been seriously challenged. For example, Professor Wigmore stated that "[t]he story of the rule

2. Act of July 13, 1953, P.L. 431, §1, et seq.; as amended by the Act of August 14, 1963, P.L. 872, §1; 62 P.S. §2043.31 et seq.

3. The rule is limited only to the question of non-access: "Although nonaccess may not be testified to by either husband or wife in order to overcome the presumption of legitimacy, a wife is competent to prove the fact and time of her marriage, her separation from her husband, the date and place of birth of her child, the fact of access by the defendant, her own adultery, and any other independent facts affecting the question of legitimacy, even though some of these facts may result in establishing illegitimacy: *Cairgle v. American Radiator and Standard Sanitary Corp.*, 366 Pa. 249, 77 A.2d 439." *Commonwealth v. Fletcher*, supra, at 68, 195 A.2d at 178.

that parents may not 'bastardize their issue' is a singular one; . . . First, a settled rule; then, a chance judicial expression, in apparent contradiction; then, a series of rulings based on a misunderstanding of this expression and an ignoring of the settled rule; then, an entirely new rule, and new and wondrous reasons contrived and put forward to defend the novelty, as if it had from the beginning been based on the experience and wisdom of generations." 7 Wigmore, Evidence, §2063, at 358 (3d Ed. 1940).[4]

Although the rule was reaffirmed by this Court in *Commonwealth ex rel. Leider v. Leider*, 210 Pa. Superior Ct. 433, 233 A.2d 917 (1967), a dissenting opinion argued for the abandonment of the rule: "I can find no justification or morality in a rule which tends to absolve the rightful father of his duty of support, while imposing such an obligation upon an innocent husband merely because of his marital relationship. . . . If decency and

---

4. See also, Id. §2064 at 68-69: "In considering the possible grounds upon which the rule may be supported, the rule of disqualification by interest may be dismissed as irrelevant. . . .

"The truth is that these high-sounding 'decencies' and 'moralities' are mere pharisaical afterthoughts, invented to explain a rule otherwise incomprehensible, and lacking support in the established facts and policies of our law. There never was any true precedent for the rule; and there is just as little reason of policy to maintain it."

See also, 49 ALR 3d 212, 219-220: "The rule has been labeled an 'absurdity,' arbitrary, illogical, and an 'eccentric incompetency.' Criticism of it is based upon assertions of its unsound foundation, upon the uncertainty of its reasons, upon the argument that the reasons given to support the rule are all without merit and are archaic and outmoded, upon its inconsistencies, upon its failure to fulfil its objectives, upon its suppression of truth and defeat of justice, and upon the theory that it has outlived its usefulness. . . .

"In this juridical climate, several courts faced for the first time with a decision as to whether the rule should be recognized in the particular jurisdiction have declined to adopt it, and a few courts have repudiated earlier decisions adopting it. Also some courts following the rule indicate a reluctance to do so."

morality are considerations, they suggest that the husband and wife be permitted to testify, not that they be silenced by an arbitrary and hypocritical rule of evidence." *Leider,* supra, at 442, 233 A.2d at 921 (dissenting opinion by HOFFMAN, J.)

The Supreme Court reversed this Court's decision in *Leider. Commonwealth ex rel. Leider v. Leider,* 434 Pa. 293, 254 A.2d 306 (1969). The Majority per Justice JONES (now Chief Justice JONES) did not reach the issue of the vialibilty of the non-access rule. Rather, the Court held that the facts in *Leider* came within the exception to the rule that if a subsequent marriage would legitimize the child, the wife may testify as to the non-access of her first husband.[5]

The rule, however, is even more suspect today than when *Leider* was decided. Since the date of this Court's decision in *Leider,* the United States Supreme Court has ameliorated much of the stigma and disability that attached to the status of illegitimacy. See, e.g., *Jimenez v. Weinberger,* 417 U.S. 628, 94 S. Ct. 2496 (1974); *New Jersey Welfare Rights Organization v. Cahill,* 411 U.S. 619 (1973); *Gomez v. Perez,* 409 U.S. 535 (1973); *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164 (1972); *Stanley v. Illinois,* 405 U.S. 645 (1972); *Levy v. Louisiana,* 391 U.S. 68 (1968); *Glona v. American Guarantee & Liability Insurance Co.,* 391 U.S. 73 (1968). But see, *Labine v. Vincent,* 401 U.S. 535 (1971). Thus, allowing the parent to "bastardize" the child by direct testimony as to non-access (always subject to indirect proof) no longer has the deleterious effect once feared by

---

5.  But see Concurring Opinion by ROBERTS, J.: "It is my view that the rule proscribing husband and wife from testifying to non-access is an anachronism and that the time for completely abandoning this rule has arrived. For the law to exclude the very evidence which may go to the heart of the issue in controversy on the basis of a public policy which has ceased to exist is to blind ourselves to the realities of today." *Leider,* at 299, 254 A.2d at 309.

our courts. Because the rule lacks a basis in good sense or in sound public policy, we are compelled to abandon its dictate.

The unfairness of the rule can be seen in the instant case. The appellee testified over objection that she had not seen her husband for over four years and that she had sexual relations only with appellant during that time. The only other evidence on the subject was clearly insufficient: three acquaintances who had infrequent social contact with the appellant and the appellee testified that they did not know Michael Savruk and that they had never seen him with appellee. Thus, without the wife's testimony, the evidence of non-access was insufficient: "the evidence to overcome the presumption of legitimacy must be 'clear, direct, satisfactory and irrefragable.'" *Commonwealth v. Carrasquilla,* supra, at 16, 155 A.2d at 475. Because the lower court heard the wife's testimony on the subject of non-access, however, there was sufficient evidence to sustain the court's findings of non-access and paternity.

Order affirmed.

JACOBS and PRICE, JJ., concur in the result.