415 A.2d 1228

COMMONWEALTH of Pennsylvania ex rel. Inez JOHNSON

v.

William PEAKE, Appellant.

Superior Court of Pennsylvania.

Argued June 20, 1979.

Filed Dec. 7, 1979.

Barry H. Denker, Philadelphia, for appellant.

Elizabeth Petry, Community Legal Services, Inc., Philadelphia, for Commonwealth, appellee.

Before HESTER, HOFFMAN, and CATANIA, JJ.[*]

HOFFMAN, Judge:

Appellant contends that the lower court erred in ordering him to pay support for Anthony Johnson because appellee failed to prove that appellant was the boy's natural father. We disagree and, accordingly, affirm the order of the lower court.

On March 9, 1977, appellee filed a petition for support of her minor son, Anthony Johnson, in which she named appellant as the putative father. The lower court conducted a hearing on October 24, 1977, at which time appellee testified to the following: Appellant and appellee met sometime in 1958 or 1959 and started having sexual relations shortly thereafter. Although appellee was married to Andrew Johnson at that time, the two had been separated since 1956.[1] Appellant and appellee maintained their intimate

---

[*] President Judge FRANCIS J. CATANIA of the Court of Common Pleas of Delaware County, Pennsylvania, is sitting by designation.

1. As of the date of the hearing, appellee and her husband were still separated, but not divorced.

relationship from 1959 through 1977.[2] Although both parties lived in Philadelphia during this period, they did not cohabit, because appellant was married and living with his wife. On April 2, 1965, appellee gave birth to Anthony Johnson, the subject of this action for support.[3] In the year before Anthony's birth, appellee did not have sexual intercourse with anyone other than appellant. Appellee did not see her estranged husband during that time period and did not know exactly where he lived.[4] Before Anthony's birth, appellant had sporadically given appellee small sums of money ($2.00–$3.00 at a time); after the birth, appellant gave appellee larger sums ($10.00–$30.00) on a more regular basis. Although appellant apparently did not specify how this money was to be used, appellee characterized it as, and the lower court expressly found it to be, support for Anthony. Appellant stopped giving appellee money sometime in 1976 or 1977.

Appellant admitted his sexual involvement with appellee between 1959 and 1977, but he denied having had intercourse with her in 1964, the year of Anthony's conception. Appellant suggested that appellee and her husband had continued intimate relations after their separation by establishing that she had borne two children by her husband between 1956 (the year in which they were separated) and 1959.[5] Appellant did not, however, attempt to refute appellee's assertion that she had not had intercourse with her husband (or anyone other than appellant) since 1959, and he admitted that he had never seen appellee's husband at her

2. Although the parties' testimony differed as to the frequency of their sexual encounters, the lower court apparently accepted appellee's assertion that they were having intercourse two or three times a week around the time Anthony was conceived.

3. Although Anthony's birth certificate lists Andrew Johnson (appellee's husband) as the boy's father, appellee denied ever giving such information to the hospital personnel who prepared the certificate.

4. Appellee did admit knowing that her husband has lived in Philadelphia since their separation.

5. The record does not reveal the exact dates of birth of these two children.

home during his eighteen-year relationship with her. The lower court rejected appellant's version of the events surrounding Anthony's birth and found appellant to be the boy's father. Accordingly, on June 1, 1978, the court ordered appellant to pay $7.00 per week for support of Anthony. This appeal followed.

■ In a civil action for support, "paternity may be shown by a preponderance of the evidence." *Commonwealth ex rel. Lonesome v. Johnson*, 231 Pa.Super. 335, 338, 331 A.2d 702, 704 (1974). Where, however, a married woman seeks to establish that someone other than her husband fathered the child for whom support is sought, she must overcome a presumption that the child is legitimate. *Cairgle v. American Radiator and Sanitary Corp.*, 366 Pa. 249, 77 A.2d 439 (1951); *Burston v. Dodson*, 257 Pa.Super. 1, 390 A.2d 216 (1978). In *Cairgle v. American Radiator and Sanitary Corp.*, *supra*, our Supreme Court stated:

> The presumption of legitimacy . . . can be overcome only by proof of facts establishing non-access or that the husband was impotent or had no sexual intercourse with his wife at any time when it was possible in the course of nature for the child to have been begotten. . . .
>
> .    .    .    .    .
>
> In order to successfully rebut the presumption of legitimacy, the evidence of non-access or lack of sexual intercourse must be clear, direct, convincing and unanswerable . . . , although it is not necessary that the possibility of access be completely excluded. . . .

*Id.*, 366 Pa. at 255–56, 77 A.2d at 442 (citations omitted). In *Burston v. Dodson, supra*, we considered the standard of proof set forth in *Cairgle* to rebut the presumption and explained that

> "unanswerable" must not, indeed cannot, be read literally, for to be "unanswerable," the possibility of access would have to be "completely excluded." This would impose a greater burden of proof than required in a criminal proceeding. Instead, "unanswerable" must be read as meaning "exceedingly strong" or "overwhelming," *i. e.*, more

than proof that is clear and convincing but not so much more as to exclude every possibility.

257 Pa.Super. at 12, 390 A.2d at 221.

Applying this standard, the Court in *Burston* held that the appellant had rebutted the presumption of legitimacy on facts quite similar to those in *Cairgle* :

In both cases the mother and husband had been separated for a long period of time. During this period of time the mother was living with or was on intimate terms with another man, and conception of the child (children) took place. The other man provided support for the mother and child (children). And finally, the fact finder found the credible evidence sufficient to rebut the presumption of legitimacy, despite testimony of access.

*Id.,* 257 Pa.Super. at 13, 390 A.2d at 222.

■ The present case is functionally indistinguishable from *Cairgle* and *Burston.* Appellee and her husband were separated and had not had sexual relations for at least five years before Anthony's birth. During that period of time appellee was on intimate terms with appellant. Appellant provided support for the child. Finally, the hearing judge expressly found appellee's testimony credible and sufficient to rebut the presumption of legitimacy, despite appellant's suggestion of access.

Of particular importance to our decision are appellant's acknowledgment of years of sexual relations with appellee, the lower court's rejection of appellant's claim of a hiatus in these relations during the year of Anthony's conception, and the uncontradicted evidence of the husband's absence and appellee's "fidelity" to appellant at all relevant times. Although appellee's only direct evidence of non-access and paternity was her own testimony, we have expressly held such evidence sufficient to rebut the presumption of legitimacy in similar circumstances. *Commonwealth ex rel. Savruk v. Derby,* 235 Pa.Super. 560, 344 A.2d 624 (1975).[6] Ap-

---

**6.** *Cf. Commonwealth ex rel. Ermel v. Ermel,* 259 Pa.Super. 219, 393 A.2d 796 (1978) (mother's bare assertion that her husband was not

pellant does not challenge the lower court's finding that appellee was "a truthful and credible witness." Accordingly, we find no error in the lower court's determination of paternity and order of support.

Order affirmed.

her child's father insufficient to rebut the presumption in the face of substantial evidence suggesting legitimacy).