477 A.2d 872

**Dolores CONNELL**

v.

**Joseph CONNELL, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 28, 1984.

Filed June 8, 1984.

1

Anne N. John, Uniontown, for appellant.

Joseph R. Rygiel, Uniontown, for appellee.

Before BROSKY, DEL SOLE and MONTGOMERY, JJ.

BROSKY, Judge:

Before us on appeal is an order directing appellant to pay support for Jeffrey Connell. Jeffrey is one of four children born to the parties during their marriage. Mr. and Mrs. Connell were married in 1952 and were separated finally in 1972, although there was also apparently an earlier separation. In 1972 Mrs. Connell sought support for three of the couple's children: Jeffrey, born May, 1969; John, born December, 1970 and Joseph, born May, 1956. Mr. Connell denied that he was the father of John and Jeffrey and blood grouping tests were therefore taken which were interpreted as excluding appellant from being Jeffrey's father. The tests indicated that Mr. Connell is John's father, however, and appellant no longer contests the paternity of the younger boy.

After the blood tests were made there were apparently no further proceedings in the case until October 25, 1979 when Mrs. Connell filed an action seeking support for both John and Jeffrey.

A hearing was held in October, 1979 following which another blood test was conducted at the same laboratory that performed the 1972 test.

The result of the 1979 test, though, indicated that appellant could not be excluded as Jeffrey's father.[1]

1. Although the record is not clear on this point, it appears that the Ayres Medical Laboratory which conducted the first blood grouping tests may have conducted a third test on Jeffrey alone confirming the 1979 results. Such a test was to be performed following the March 18, 1980 hearing.

4

On March 26, 1980, following hearing, the lower court issued an order decreeing that appellant is Jeffrey's father and directing that support payments be made by him. However, the order also granted leave to appellant to seek further blood testing at the Paternity Testing Laboratory in Pittsburgh.

H.L.A. tests were conducted by the Pittsburgh Laboratory in 1980 and the results excluded appellant from being Jeffrey's father.

Appellant then filed a petition to decrease the amount of support that he had been ordered to pay, which was denied in February, 1981, following hearing.

On March 12, 1981 appellant filed a Petition for Blood Test which was granted, the court directing the parties to submit to blood groupings testing at the Rh Typing Laboratory, Inc. in Baltimore. Mr. Connell was ordered to pay for the test and also for Mrs. Connell's and Jeffrey's transportation.

Appellant did provide Mrs. Connell with the required sum and she and her son met Mr. Connell at the laboratory. Unfortunately, however, the scene was an emotional one due in part, it seems, to the presence of Mr. Connell's girlfriend, and in part to Jeffrey's anxiety about the repeated blood tests he had undergone. The court and parties had agreed not to tell Jeffrey the reason for the tests and apparently he was very nervous about the situation.

The result of the emotional scene at the laboratory was that Mrs. Connell and Jeffrey left without being tested. The lower court, however, found that the situation was caused by what it considered Mr. Connell's insensitivity in taking his girlfriend to the laboratory and concluded any further testing would adversely affect Jeffrey.

Based then on the record before it, including the Rh blood and H.L.A. tests, the court reaffirmed its March 1980 finding of paternity and order of support. This appeal followed.

Mr. Connell argues on appeal that: (1) in fact all the experts agreed that he is not the father, (2) the trial court should have based its decision solely on the blood tests which excluded paternity, (3) Mrs. Connell did not meet her burden of proving paternity by a preponderance of the evidence, and (4) following the incident at the Baltimore laboratory in March, 1981, the lower court should either have dismissed the support action or ordered another blood test.

We will dispose of the first two issues quickly.

Contrary to appellant's contention, not all the expert evidence agreed that he could be excluded as Jeffrey's father.

While the 1972 test conducted by Dr. Ayres did exclude appellant, the 1979 test did not. Dr. Ayres testified that the 1979 results were correct and the lower court opinion states that a third test conducted by Dr. Ayres confirmed the 1979 result that could not exclude appellant. Dr. Ayres' results differed from those of the H.L.A. test. Nor do we agree with appellant's contention that Dr. Ayres indicated that he would no longer consider his results correct, if a H.L.A. test result differed from his. In fact Dr. Ayres testified that the results could be confirmed by another Rh test and that H.L.A. testing would not be necessary.

Because we find that in fact the expert evidence did not agree that appellant could be excluded, we must also reject appellant's argument that the trial court should have relied solely on the blood test results in deciding the case.

The Uniform Act on Blood Tests to Determine Paternity, 42 P.C.S. § 6136 provides:

§ 6136. Effect of test results

If the court finds that the conclusions of all the experts as disclosed by the evidence based upon the tests are that the alleged father is not the father of the child, the question of paternity, parentage or identity of a child shall be resolved accordingly. *If the experts disagree in*

*their findings or conclusions, the question shall be submitted upon the evidence.* (emphasis added).

Before recounting the evidence, we note that appellant has argued that appellee had the burden to prove his paternity by a preponderance of the evidence. If the child had been born out of wedlock this would indeed be the case. See 42 Pa.C.S. § 6704(d).

Jeffrey, however, was born during the parties' marriage, while they were living together. Under these circumstances there arises a strong presumption of legitimacy. *Commonwealth ex rel. Spangler v. Spangler*, 283 Pa.Super. 190, 423 A.2d 1053 (1980). The burden of proof rested on appellant, to show clear, direct, convincing and unanswerable evidence of non-access or lack of sexual intercourse or impotency. See *Spangler, supra,* (Brosky, J. concurring). See also *Commonwealth ex rel. Johnson v. Peake*, 272 Pa.Super. 340, 415 A.2d 1228 (1979); *Burston v. Dodson*, 257 Pa.Super. 1, 10, n. 10, 390 A.2d 216, 220, n. 10 (1978). Appellant did not meet this burden.

Jeffrey was born in May, 1969. While appellant did testify that he and his wife did not have sexual relations in 1968, Mrs. Connell testified directly to the contrary, saying that they had engaged in a fairly regular pattern of intercourse. Credibility, of course, is for the fact finder. Given the trial court's finding of paternity, we conclude that it rejected Mr. Connell's claim not to have engaged in relations with his wife with whom he resided during the relevant period.

Even following the Connells' separation three years after his birth, Mr. Connell sent Jeffrey several birthday and holiday cards and gifts of money expressing his love for the boy and signed "Dad". Mrs. Connell testified that while they were living together her husband introduced Jeffrey as his son.

Additionally the Rh blood tests conducted in 1979 indicated that Mr. Connell could not be excluded as Jeffrey's father. Based on this evidence the lower court issued its

March 26, 1980 order declaring appellant to be Jeffrey's father. We find no error in that determination.

■ We turn finally to appellant's claims that the H.L.A. test should be treated as conclusive or, in the alternative, that further testing should be ordered. Generally we would find that the court having already determined the paternity issue, appellant would be precluded from requesting further blood tests. See *Commonwealth ex rel. Palchinski v. Palchinski*, 253 Pa.Super. 171, 384 A.2d 1285 (1948). See also *Corra v. Coll*, 305 Pa.Super. 179, 451 A.2d 480 (1982) (once paternity is established, the issue cannot be relitigated).

■ In this case, however, the March 26, 1980 order expressly granted appellant leave to seek another blood test. While we therefore agree that the lower court could have properly considered the H.L.A. results, we do not agree that the result of that test should be treated as being conclusive. Nor do we believe that the court erred in refusing to order yet another test after the Baltimore incident.

In our opinion in *Turek v. Hardy*, 312 Pa.Super. 158, 458 A.2d 562 (1983) we held that the result of H.L.A. tests are relevant to a determination of paternity. We concluded that the test is generally reliable and helpful in establishing paternity, but we were careful to state, ... "[o]ur holding is limited to the conclusion that H.L.A. blood test results may be introduced as some evidence of paternity. We do not hold that this evidence is conclusive." (312 Pa.Superior Ct. at 164, 458 A.2d at 565).

■ In sum we conclude that the lower court properly concluded that Jeffrey is Mr. Connell's child. The addition of the H.L.A. results did not mandate a different result in view of all of the evidence before the court. Nor was the court required to permit yet another test, when the child in question had already been tested four times.

In this connection see 42 Pa.C.S. § 6133 which provides that the court may order blood tests on the motion of any

8

party made at such time as not to delay the proceedings unduly. The instant proceedings began in 1972 and were reinstituted in 1979. The lower court did not err in refusing in 1981 to order a fifth blood test.

Order affirmed.