480 A.2d 1199

**In re ESTATE OF Alma L. BROCKERMAN, Deceased.**

**Appeal of Roberta Lee JACKSON, A/K/A Gerdelmann, Executrix For the Estate of Alma L. Brockerman, Deceased, Appellant.**

Superior Court of Pennsylvania.

Argued May 1, 1984.

Filed Aug. 3, 1984.

90

James A. Lynch, III, Havertown, for appellant.

James Weiner, Philadelphia, for appellee.

Before SPAETH, President Judge and BROSKY and CIRILLO, JJ.

SPAETH, President Judge:

This is an appeal from an order dismissing appellant's exceptions and awarding additional attorneys' fees to

appellee.[1] Appellant is the executrix of the estate of Alma L. Brockerman. Appellee is a law firm that performed services for the Brockerman estate.[2] Appellant argues: (1) that the orphans' court erred in not surcharging appellee's attorneys' fees by $6,000, this being the amount of loss allegedly incurred by the Brockerman estate due to the alleged negligence of one of appellee's attorneys; and (2) that the orphans' court erred in awarding additional attorneys' fees without sufficient evidence to support the award. Appellant's first argument is without merit, but we agree with appellant's second argument. We therefore affirm the dismissal of appellant's exceptions but reverse the award of additional attorneys' fees and remand the case to the orphans' court for further proceedings.

–1–

Appellant argues that the attorneys' fees awarded to appellee should be surcharged by $6,000 because the negli-

1. It might seem from this statement that the appeal should be quashed, since an order dismissing exceptions is interlocutory and nonappealable until judgment has been entered on the docket. *See, e.g., Murray v. Abcon, Inc.,* 291 Pa.Super. 428, 435 A.2d 1301 (1981). However, in this case judgment has been entered. It was entered on the docket on May 14, 1981, because appellant failed to timely file exceptions. By order dated November 25, 1981, appellant was granted leave to file exceptions nunc pro tunc. When granting this leave, the orphans' court should have vacated the judgment entered on May 14, 1981. Then, if the court dismissed the nunc pro tunc exceptions, judgment could be entered again, and an appeal filed. However, the court did not vacate its May 14, 1981, judgment. Therefore, when the court dismissed appellant's exceptions, on January 7, 1982, the judgment remained on the docket, and this appeal is in practical effect from that judgment.

2. We refer to the law firm as appellee although there appears to be some uncertainty as to whether the appellee is the firm itself or the individual attorney whose conduct is at issue. The original attorneys' fees were awarded to the individual attorney and the order awarding additional fees does not specify whether the fees are awarded to the individual attorney or the firm. Nevertheless, the notes of testimony indicate that the award of additional fees was based on services performed by several attorneys in the firm. N.T. 37.

gence of one of appellee's attorneys [3] caused the estate to suffer a loss in that amount. There are two aspects to this argument: that the attorney was negligent, and that this negligence caused a loss of $6,000 to the Brockerman estate.

With respect to the allegation of negligence, the notes of testimony disclose the following: The Brockerman estate had a claim against Albert C. Jackson, appellant's ex-husband. Alma Brockerman died in February 1971. N.T. 8. Approximately one week later appellant retained one of appellee's attorneys and requested that he attempt to collect any debts that were owed to the Brockerman estate. N.T. 8, 11. The attorney filed a complaint against Mr. Jackson on September 28, 1973, and service was made on October 12, 1973. N.T. 6. An answer was not filed within the 20 day period and a default judgment in the amount of $6,000 was taken on April 15, 1975. N.T. 7, 32. Mr. Jackson had died on January 5, 1975. N.T. 24. Appellant testified that she had made repeated phone calls to the attorney and that she did not know why there was a delay in filing the complaint. N.T. 12, 13.

■ Appellant contends that the delay in filing the complaint and the subsequent delay in taking a default judgment constituted negligence. The orphans' court, however, did not evaluate this contention or the evidence offered in support of it. Rather, the court held that on the evidence

---

**3.** The attorney whom appellant alleges was negligent is Stephen J. McEwen, Jr., now a judge of this court. For this reason this court was of the view that it should not hear and decide this appeal. *Cf. Commonwealth ex rel. Armor v. Armor,* 263 Pa.Super. 353, 398 A.2d 173 (1978) (where divorced mother had married member of Montgomery County bench, no judge of Court of Common Pleas of Montgomery County could properly hear child support dispute between mother and ex-husband; appellee's appearance before bench necessarily involved her remarriage to member of that bench and therefore demanded that case not be heard by husband's colleagues) (per PRICE, J., with two judges concurring). We therefore certified the appeal to the Supreme Court on August 9, 1983. The Supreme Court nevertheless refused to hear the appeal and by order of April 16, 1984, remanded the appeal to us for decision, with a direction that oral argument be heard within 30 days. Oral argument was heard on May 1, 1984.

before it appellant had failed to establish the second element of her argument, that is, that the attorney's conduct caused a $6,000 loss to the Brockerman estate. Therefore, the court concluded, it did not need to decide whether the attorney's conduct was negligent.

Appellant's theory of causation is as follows: Because the attorney did not take a default judgment until after Mr. Jackson's death, the Brockerman estate was only an unsecured creditor of the Jackson estate. The priority of claims against an estate is determined at the time of death, and the entry of judgment after Mr. Jackson's death therefore did not and could not improve the position of the Brockerman estate. The claim of the Brockerman estate was not paid because the Jackson estate was insolvent; only secured creditors of the Jackson estate were paid. If the attorney had acted diligently and secured a judgment before Mr. Jackson's death, the Brockerman estate could have become a secured creditor of the Jackson estate with priority over unsecured creditors and probably over other secured creditors. If the claim of the Brockerman estate had had such priority, it would have been paid.

We are not able to reach the merits of this argument, just as the orphans' court was not able to. This is because appellant did not introduce sufficient evidence in the orphans' court to support her theory of causation. There is no evidence in the record as to why the claim of the Brockerman estate was not paid. Specifically, there is no evidence in the record that the Jackson estate was insolvent, and there is no evidence in the record that only secured creditors of the Jackson estate were paid. Appellant testified on direct examination that secured creditors of the Jackson estate were paid. N.T. 28. On cross-examination of appellant it was brought out that after sale of the Jackson residence, on October 27, 1976, and after payment of the mortgage and secured creditors, there remained $8,768.73 in net proceeds from the sale. N.T. 32. The record is silent as to why the $6,000 claim of the Brockerman estate was not paid from the net proceeds of the sale.

On the record before it the orphans' court properly concluded:

However, the testimony and evidence does not bear out Exceptant's contention. Although it is true that the Judgment was not entered until April 15, 1975, the settlement of her ex-husband's residence did not take place until October 27, 1976, when there was still sufficient equity in the residence to cover the default judgment. Consequently, the Exceptant's contention that the delay in obtaining the judgment precluded recovery by the Estate is without merit. (N.T. 32). The Judgment was clearly entered prior to the sale of the residence. And, the Exceptant was duly notified of the Judgment by letter dated April 24, 1975, as was her Counsel, Michael Cantwell. (N.T. 34). As Executrix for the Estate, the Exceptant had the responsibility and the opportunity to collect the outstanding debt.

■ Apparently recognizing that the evidence before the orphans'· court did not support her theory, appellant has attached to her brief on appeal copies of the first and the final accounts of the Jackson estate and copies of various letters regarding the claim of the Brockerman estate against the Jackson estate. However, none of these documents was entered into evidence in the orphans' court.[4] It is well-settled that documents that are not a part of the record should not be included in the reproduced record and may not be considered on appeal. *See Auman v. Juchniewitz*, 312 Pa.Super. 98, 458 A.2d 254 (1983). On the record before it, and before us, the orphans' court properly concluded that appellant had failed to show that the attorney's conduct caused the Brockerman estate to suffer a loss. *See Brown's Estate*, 343 Pa. 19, 21 A.2d 898 (1941) (orphans' court did not err in refusing to surcharge trustee where exceptants failed to furnish affirmative evidence to sustain

**4.** There is testimony in the record regarding the contents of one of the letters, a copy of which appellant has attached to her brief. *See* N.T. 31–32. Nevertheless, the letter itself was not offered into evidence at the hearing and no testimony was offered concerning the parts of the letter that would apparently support appellant's theory of causation.

their contention that trustee was negligent in failing to pursue claims).

Although the first and second accounts of the Jackson estate are apparently matters of record in the case of *In re Estate of Albert C. Jackson* in the Delaware County Court of Common Pleas, a court may not ordinarily take judicial notice in one case of records in another case, even when the case arose in the same court and the contents of the records are known to the court. *See Callery v. Blythe Township Municipal Authority,* 432 Pa. 307, 243 A.2d 385 (1968); *Naffah v. City Deposit Bank,* 339 Pa. 157, 13 A.2d 63 (1940). *But see McFarland Estate,* 377 Pa. 290, 105 A.2d 92 (1954) (court examined record in county court case and took judicial notice of fact that appellant's husband had deserted her). *Cf. Schulz Estate,* 392 Pa. 117, 139 A.2d 560 (1958) (entire record of estate involved in this case was admitted into evidence, but if it were not, court could take judicial notice thereof); *Buncher v. Buncher,* 207 Pa.Super. 322, 217 A.2d 861 (1966) (rule not strictly applied in divorce actions). Moreover, this court will not take judicial notice of evidence of which the trial court was not requested to take judicial notice, and appellant made no such request to the orphans' court. *Wilson v. Pennsylvania Railroad Co.,* 421 Pa. 419, 219 A.2d 666 (1966); *Platt v. Philadelphia,* 183 Pa.Super. 486, 133 A.2d 860 (1957).

Finally, the record before us reveals that appellant had ample opportunity to present evidence in support of her theory, but did not do so. At the close of the hearing on appellant's exceptions, appellant's attorney restated appellant's theory to the court. N.T. 45. Appellee's counsel also restated its position to the court that there was money in the Jackson estate and that appellant just did not collect it. N.T. 46. The court made clear its view that the facts on the record did not bear out appellant's contention. N.T. 45. Nevertheless, appellant still did not introduce the evidence necessary to establish that the attorney's conduct caused a loss to the Brockerman estate. By thus not presenting the relevant evidence to the orphans' court, appellant has failed

to preserve the issue she now argues. *See Commonwealth v. National Federation of the Blind*, 471 Pa. 529, 370 A.2d 732 (1977) (issue of technical defect in service was not raised in trial court and therefore would not be considered on appeal); *DiAndrea v. Reliance Savings and Loan Ass'n*, 310 Pa.Super. 537, 456 A.2d 1066 (1983) (in reviewing order granting motion on pleadings, court may consider only pleadings and documents attached thereto; issue of fact raised in petition to trial court and not attached to pleadings is not preserved for appellate review; appellants had ample opportunity to amend complaint to add relevant allegation but failed to do so).

–2–

Appellant also argues that the orphans' court erred in awarding additional attorneys' fees without sufficient support in the record for the award.[5] In the decree nisi the orphans' court awarded attorneys' fees of $3,103.40 "plus payment for fees since submission of that bill at [the attorney's] standard hourly rate." Appellant excepted to this award and at the hearing testified that there had been no agreement to pay additional fees and that her understanding was that only $3,100 remained to be paid. N.T. 9–10. Appellee's counsel acknowledged that the claim for additional fees was not based on an agreement, but was based on quantum meruit. N.T. 43. The court determined that services were in fact performed beyond the original agreement and that appellee was entitled to compensation on the basis of quantum meruit. N.T. 43–44.

**5.** Appellant mistakenly characterizes the award of additional attorneys' fees as being in the amount of $3,103.40, when this amount was in fact the amount that was admitted to be due under the agreement. There is, however, a discrepancy in the amount of additional attorneys' fees actually awarded. Following the hearing on exceptions the orphans' court orally awarded total fees of $6,848.60, making the additional fees $3,745.20, but in its written order the court awarded total fees of $6,948.80, making the additional fees $3,845.40. Since we are reversing the award of additional fees and remanding anyway, the discrepancy is not important.

■ It is well-settled that the supervision of compensation is within the discretion of the orphans' court. *In re Reed Estate,* 462 Pa. 336, 341 A.2d 108 (1975). Nevertheless, when the compensation awarded is without support in the record, the award cannot stand. *Id.; Crawford's Estate,* 307 Pa. 102, 160 A. 585 (1932) (court abused its discretion in reducing attorneys' fee award where there was no evidence to contradict extensive evidence that fee was reasonable, and court did not explain reasons for reduction); *Moore's Estate,* 228 Pa. 516, 77 A. 899 (1910) (court abused its discretion in reducing attorneys' fee award where itemized statement of services was submitted, there was no evidence to show services were not worth amount requested, and court gave no reasons for reduction).

■ "When the fees of counsel come before the orphans' court, it is a function of the court to decide what is a reasonable and just compensation under all the circumstances." *Crawford's Estate,* 307 Pa. at 111, 160 A. at 588. Factors to be considered are "the size of the estate, the novelty and difficulty of the questions involved, the extent of counsel's labor on the case and the time the labor required, the responsibility assumed by counsel, and his professional standing." *Warden Estate,* 348 Pa. 224, 225, 35 A.2d 297, 298 (1944).

■ The orphans' court did not explain in its opinion the reasons for the amount it awarded as additional fees. *Cf. Estate of McClatchy,* 492 Pa. 352, 353, 424 A.2d 1227 (1981) (judge explained in his opinion that from first-hand experience he was familiar with entire record and knew that extraordinary services had been performed on behalf of estate). Nor does the record reveal in sufficient detail the basis for the amount awarded. One of appellee's attorneys testified as to the services performed and the amount of fees requested. He testified that from June 1973 until October 1978, when one James Lynch, the father of present counsel for appellant, also started to do work on behalf of the Brockerman estate, the firm's fee was $2,478.50 and costs were $10.40. N.T. 37. He further testified that from

November 1978 until November 1981 the firm's fee was $1,223 and costs were $28.45, *id.;* that three attorneys from the firm had performed these services for the estate, *id.;* and that the fees sought were based on the attorneys' hourly rates. N.T. 38. This testimony was based on a summary that was prepared by the attorney from records kept by the firm regarding the time and type of services performed. N.T. 36. The attorney further testified, not on the basis of this summary, that after November 1981 approximately $1,400 worth of time had been spent on the Brockerman estate. N.T. 38. On cross-examination the attorney testified that he had the figures broken down by calendar year, hours for each attorney, and hourly rate, N.T. 40, but this information does not appear in the record. The attorney testified that some of the time spent after Mr. Lynch also began to represent the Brockerman estate for which fees were being sought could have been spent in attempting to collect the firm's fee, but that some of it was also spent in attempting to get Mr. Lynch to file a second account. N.T. 41–42. The attorney was unable to give any specific estimates of how the time was spent. N.T. 42. Finally, the attorney testified that the charges were fair and reasonable for the services rendered at the time and in the general area. N.T. 44.

We do not consider this record sufficient to support the orphans' court's award of additional attorneys' fees. It does not appear what hourly rate the firm charged, what the prevailing rate in the general area was at the time, what services were performed, or how much time those services consumed. *Cf. Browarsky Estate,* 437 Pa. 282, 263 A.2d 365 (1970) (attorneys presented bills representing total fee, hours spent and hourly rate, and testified as to work performed); *Fraiman Estate,* 408 Pa. 442, 184 A.2d 494 (1962) (attorney testified as to services rendered and presented to court a 66 page memorandum that noted letters written, conferences, phone calls, etc.; members of bar testified as to reasonableness of fee for work performed); *Bickel Appeal,* 388 Pa. 270, 130 A.2d 498 (1957)

(in lengthy opinion court outlined all services performed by attorney, noted rate of professional compensation in county, noted no extraordinary services were performed and that legal questions involved were not novel, and considered time spent and fee charged to remainderman for prior services). Given the sparsity of the record and the absence of explanation by the court for the amount of additional fees awarded, the award of additional fees must be reversed and the case remanded for further proceedings.

The dismissal of appellant's exceptions is affirmed, but the award of additional attorneys' fees is reversed and the case is remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.