534 A.2d 771

**Leslie WARE, Appellant**

v.

**Joseph McKNIGHT.**

Superior Court of Pennsylvania.

Argued June 25, 1987.

Filed Oct. 26, 1987.

Reargument Denied Dec. 23, 1987.

Matthew K. Perks, Assistant District Attorney, Philadelphia, for appellant.

Francis X. Nolan, Philadelphia, for appellee.

Before CIRILLO, President Judge, and McEWEN and TAMILIA, JJ.

CIRILLO, President Judge:

This is an appeal from a denial of appellant's petition for reconsideration and to reopen to allow additional evidence, or in the alternative, a new trial.  Appellant argues that the

Court of Common Pleas of Philadelphia County erred in denying her petition. We affirm.

The appellant presents three issues for our review: (1) whether the trial court erred in finding evidence insufficient to overcome the presumption of legitimacy; (2) whether the trial court erred in failing to consider the results of the HLA blood testing requested by and stipulated to by appellee; and (3) whether the trial court abused its discretion in refusing to grant a new trial after being informed of the after-discovered evidence.

Appellant, Leslie Ware, met appellee, Joseph McKnight, on May 15, 1976 and lived with him for almost three years. She became pregnant in November of 1977, and her child was born on August 7, 1978. Although appellant admitted she was married to another man in 1974, and not divorced from her husband until April 13, 1982, she testified that she had sexual relations only with appellee during October through December of 1977. Appellant indicated that during her relationship with appellee, her husband was involved with another woman. The parties continued living together for approximately nine months after the child was born. Appellee denies any sexual relations with appellant, but admits giving her fifty-eight dollars in 1985 because she was harassing him at work.

On July 23, 1980, a complaint for support was filed against appellee by the Pennsylvania Department of Public Welfare. At the first listing on August 18, 1980, no one appeared. The case was then referred to the Parent Locater Service. Appellee was located in California, so appellant was asked to file a complaint under the Uniform Reciprocal Enforcement of Support Act. 42 Pa.C.S.A. § 6761 *et seq.* On May 28, 1985, appellant filed a petition for support with the Philadelphia Domestic Relations Section.

On December 11, 1980, appellee appeared at a pretrial conference where he denied paternity of the child. He requested blood studies and signed a stipulation of admissibility. Although appellant was not present at the pretrial

conference, this proceeding was entered on the docket. Therefore it became part of the record.

After several continuances, a non-jury trial was held on June 11, 1986. Prior to trial, appellee's counsel refused to stipulate to the admissibility of the blood test and appellant's counsel agreed to proceed to trial without the stipulation. Appellant's counsel never offered the results of the blood test as evidence. On July 24, 1986, the trial judge entered an order denying appellant's petition for support.

On August 6, 1986, appellant filed exceptions and a petition for reconsideration and to reopen to allow additional evidence, or for a new trial. After a hearing on November 28, 1986, the judge denied this petition. This appeal followed.

■ Appellant first alleges that the trial court erred in finding the evidence insufficient to overcome the presumption of legitimacy. There is a strong presumption that children who are born in wedlock are legitimate. *In re Manfredi's Estate*, 399 Pa. 285, 159 A.2d 697 (1960); *Commonwealth ex. rel. Spangler v. Spangler*, 283 Pa.Super. 190, 423 A.2d 1053 (1980). To overcome this presumption, the burden rests on appellant to show clear, direct, convincing and unanswerable evidence of non-access or lack of sexual intercourse or impotency. *Connell v. Connell*, 329 Pa.Super. 1, 477 A.2d 872 (1984).

Here, appellant's only evidence to overcome the presumption of legitimacy was that her husband was involved with another relationship while she was involved with appellee. The trial judge found this evidence did not overcome the presumption of legitimacy.

■ When, upon review, the issue is whether evidence presented was clear, direct, precise, and convincing, a question of law is presented and such issue is clearly for determination by appellate courts. *In re Nicolazzo's Estate*, 414 Pa. 186, 199 A.2d 455 (1964). The trial court's conclusions of law are not binding on an appellate court, whose duty is to determine whether there was proper

application of law to fact by the trial court. *2401 Pennsylvania Ave. Corp. v. Federation of Jewish Agencies of Greater Philadelphia,* 507 Pa. 166, 489 A.2d 733 (1985); *Linnet v. Hitchcock,* 324 Pa.Super. 209, 471 A.2d 537 (1984). Although this court is not bound by the trial court's findings, where appellant's only evidence is that her husband was involved with another relationship, this court agrees with the trial court that the evidence is not clear and convincing so as to overcome the presumption of legitimacy.

Appellant next claims that the trial court erred in not taking judicial notice of the results of the HLA blood testing requested by and stipulated to by appellee. This claim lacks merit because counsel never requested the judge to take notice of results of the blood test. *See Chaplin v. Pelton,* 282 Pa.Super. 487, 423 A.2d 8 (1980) (the trial court could not take judicial notice of the effect of a tax deed without the request to take such notice). In the present case, counsel stated, "I was under the impression that there might be a stipulation between counsel, but evidently there will not be a stipulation as to the admissibility. So we are prepared to go forward, Your Honor." Counsel proceeded to trial without ever requesting the judge to take notice of the results of the blood test or the stipulation.

Upon review, an appellate court may take judicial notice of a fact to the same extent as the trial court. *Goff v. Armbrecht Truck Sales, Inc.,* 284 Pa.Super 268, 426 A.2d 628 (1980). *See also Tallman v. Florey,* 179 Pa.Super. 354, 115 A.2d 752 (1955) (where a reviewing court could not take judicial notice of a medical treatise which had not been introduced into evidence). Upon review of the present case, this court cannot take notice of the results of the blood test or the stipulation of admissibility because the trial court did not take judicial notice of them and they were never offered into evidence.

As a final issue, appellant contends that the trial judge abused his discretion in refusing to grant a new trial after

being informed of the after-discovered evidence. The standard regarding after-discovered evidence is whether it:

(1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeaching credibility of a witness; and (4) is of such a nature and character that a different verdict will likely result if a new trial is granted.

*Commonwealth v. Ball,* 357 Pa.Super. 32, 34, 515 A.2d 307, 308 (1986).

■ There is no new evidence in this case. Appellant claims that the after-discovered evidence is the stipulation of admissibility of the blood test. The stipulation was signed by the appellee and was entered on the record seven months prior to trial. This was known to appellant. The judge did not abuse his discretion in failing to grant appellant a new trial. While the blood test result would certainly have been very helpful to appellant's case, the court cannot be expected to remedy the failure of appellant's counsel to adequately prepare for trial.

The order of the trial court is affirmed.

TAMILIA, J., dissents.

TAMILIA, Judge, dissenting:

I respectfully dissent from the majority memorandum which affirms the Order of the trial court denying appellant's petition for support. I would vacate the Order and remand for further consideration.

This appeal was taken by Leslie Ware from an Order entered by the court below denying her petition for support which had been filed against appellee, Joseph McKnight. A complaint for support was filed on July 24, 1980, against appellee by the Pennsylvania Department of Public Welfare, on behalf of minor child, Joseph McKnight. When no one appeared at the first listing, the court referred the case to Parent Locator Service. Appellee was located living in

California, after which appellant was asked to file a new complaint under the Uniform Reciprocal Enforcement of Support Act (URESA), 42 Pa.C.S.A. § 6761 *et seq.*

On May 28, 1985, the Philadelphia Domestic Relations Section received a procedural complaint filed by appellant. Appellee appeared on December 11, 1985, for a pretrial conference, at which time he denied paternity of the child, requested blood studies and signed (according to appellant's brief), in the presence of a hearing officer, a stipulation of admissibility of the results.[1]

Blood was drawn from appellee on December 11, 1985 and from appellant and the child on December 18, 1985. HLA testing showed a probability of paternity of 99.47 per cent. The results were placed in the Domestic Relations Section record.

After a series of continuances, a non-jury trial was conducted on June 11, 1986, at which both parties testified. At the close of trial, the judge held the matter under advisement. On July 24, 1986, the judge entered an Order denying appellant's petition for support.

On August 6, 1986, appellant filed exceptions and a petition for reconsideration and to reopen to allow additional evidence, or for a new trial. In this petition, appellant alleged that her counsel was "mistakenly unaware" that there existed a stipulation for the admission of the blood test results, and so prior to trial, appellant's counsel had requested appellee's counsel to stipulate to the admissibility of the results. Appellee's counsel had refused this request. Since the court, at a previous listing, had marked the case "Must be tried", appellant proceeded to trial without actual evidence of the blood test as the expert was not available to support it. Appellant further argued that with a 99.47 per cent probability that appellee was the child's father, equity called for reconsideration of the matter. The trial judge

1. This procedural history is derived from appellant's brief; appellee failed to file a brief and the trial court Opinion contains only a very limited history. We have no actual knowledge that the events, as set forth in appellant's brief, are accurate.

denied the petition on November 28, 1986, after a hearing. This appeal followed.

Appellant's testimony at trial was as follows. The child, Vincent McKnight, was born August 7, 1978. The father of the child is Joseph Vincent McKnight. Appellant met McKnight on May 15, 1976, at which time she began having sexual relationships with him which continued until 1979 or 1980, after the child's birth.. The couple lived together continuously for approximately three years between 1976 and 1979. She said she had not had sex with anyone but the appellee during the entire three year period. Beginning about three or four months following the birth of the child, the three lived with appellee's parents for about the next six to eight months. During this entire time she was married; she had married in 1974 and was not divorced until 1982. She testified, however, that she only saw her husband once during the period she was with McKnight, and that was in 1976 on the train in McKnight's presence. Further, appellant testified that appellee had mailed her a money order in May of 1985 in the amount of $50, and another in June in the amount of $50, for support of the child (H.T. 6/11/86, pp. 4–7, 10–11, 15–17).

Appellee testified that appellant had harassed him at his job and that was why he had sent her a $58 money order in 1985, that he had not had sexual relations with the appellant, and that the child was not his.

The trial judge held that the appellant's failure to introduce non-exclusionary blood test results coupled with the appellant's failure to provide sufficient evidence to overcome the presumption of legitimacy of the child compelled the court to find for the appellee.

On appeal, appellant makes three arguments. First, she argues that the lower court erred in failing to consider the results of HLA blood testing requested by and stipulated to by the appellee. The trial judge, in his opinion, points out that the counsel for appellant at trial said that although there would be no stipulation as to admissibility, he was prepared to go forward, nevertheless (Slip Op., Zaleski, J.,

1/23/87, p. 2). Appellant's counsel did not offer blood test results for admission into the record at the hearing. (Slip Op. at 2).

While appellant argues the stipulation was contained in the Domestic Relations record which was available to the judge at trial, I would find the judge committed no error in failing to take judicial notice of the stipulation and results. "[A] court may not ordinarily take judicial notice in one case of records in another case, even when the case arose in the same court and the contents of the records are known to the court." *In re Estate of Brockerman*, 332 Pa.Super. 88, 95, 480 A.2d 1199, 1202 (1984) (citing *Callery v. Blythe Township Municipal Authority*, 432 Pa. 307, 243 A.2d 385 (1968); *Naffah v. City Deposit Bank*, 339 Pa. 157, 13 A.2d 63 (1940)). "Moreover, this court will not take judicial notice of evidence of which the trial court was not requested to take judicial notice...." *Brockerman, supra* 332 Pa.Super. at 95, 480 A.2d at 1202. Accordingly, I would find no error in the judge's failure, at trial, to consider the results of the blood tests.

Appellant's next argument is lower court abuse of discretion in refusing to grant the appellant's petition to reopen the proceeding, after the court was made aware, through post-trial motions, of the HLA blood test results. "It is well-settled that documents that are not part of the record should not be included in the reproduced record and may not be considered on appeal." *Brockerman, supra*, 332 Pa.Superior Ct. at 94, 480 A.2d at 1202 (1984) (citing *Auman v. Juchniewitz*, 312 Pa.Super. 98, 458 A.2d 254 (1983)). As the results and the stipulation were not introduced into evidence or made part of the record at trial, they are not part of the certified record before us for review. While this Court is prevented from considering those matters in the reproduced record for those reasons, we may consider the statements of questions involved and statement of the case, as presented in appellant's brief, when they go unchallenged in the appellee's brief or when appellee elects not to

file a brief. Rule of Appellate Procedure 2112, **Brief of the Appellee,** provides:

**Rule 2112. Brief of the Appellee**

The brief of the appellee, except as otherwise prescribed by these rules, need contain only a summary of argument and the complete argument for appellee. However, the appellee may add a counterstatement of the questions involved and a counterstatement of the case. Unless the appellee does so, or the brief of the appellee otherwise challenges the questions involved or the statement of the case as stated by appellant, it will be assumed the appellee is satisfied with them, or with such parts of them as remain unchallenged.

In this case, appellee failed to file a brief so this Court may accept the statement of questions and statement of the case propounded in appellant's brief to be accurate, since they are unchallenged. The heart of this matter lies in the knowledge of the defendant and/or his lawyer in denying the existence of a "stipulation" in the files of the Family Court Division. Appellant's brief alleges such a denial and the record supports this (N.T. 6/11/86, pp. 3–4). The paternity action in this case was commenced in 1980 by complaint filed through the intercession of the Department of Welfare. Through great effort, defendant was finally located and brought to court, with intervening continuations beginning in 1985. At a court conference, he denied paternity, and pursuant to Pa.R.C.P. 1910.15, exercised his right to trial and to obtain a blood test. The blood test, according to appellant (unchallenged by appellee), was completed and a stipulation form was signed by appellee for its admission into court. A breakdown occurred when the stipulation form, contained in a Family Court file in a different office of the court, was not presented in court for review. In the landmark case *Little v. Streater,* 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981), in which the right of an indigent defendant to have a blood test performed in a paternity proceeding at state expense was mandated, the United States Supreme Court stated:

Through the judicial process, the State properly endeavors to identify the father of a child born out of wedlock and to make him responsible for the child's maintenance. *Obviously, both the child and the defendant* in a paternity action have a compelling interest in the accuracy of such a determination.[9]

. . . .

The State admittedly has a legitimate interest in the welfare of a child born out of wedlock who is receiving public assistance, as well as in securing support for the child from those legally responsible. In addition, it shares the interest of the child and the defendant in an accurate and just determination of paternity.

----

[9] In its report on the 1974 Social Services Amendments to the Social Security Act, 42 U.S.C. §§ 654, 655, et al. [42 U.S.C.S. §§ 654, 655 et al.], the Senate Finance Committee stated:

'In taking the position that a child born out of wedlock has a right to have its paternity ascertained in a fair and efficient manner, the [C]ommittee acknowledges that legislation must recognize the interest primarily at stake in the paternity action to be that of the child.... The Committee is convinced that ... paternity can be ascertained with reasonable assurance, particularly through the use of scientifically conducted blood typing.' S.Rep. No. 93–1356, p. 52 (1974).

*Id.* at 13, 101 S.Ct. at 2209, 68 L.Ed.2d at 237 (emphasis added).

Under the circumstances of this case, considering the substantial and irreversible possible consequences to the child in failing to have paternity determined, and to the state in assuming the burden of support, which will cost the taxpayers hundreds of thousands of dollars over the lifetime of the child, equity requires the vacation of the judgment and reopening of the case to permit a review of that evidence.

I would find, therefore, that the lower court abused its discretion in failing to grant the petition to reopen.

The general rule is that 'a court may, in its discretion, reopen the case after a party has closed for the taking of additional testimony, but such matters are peculiarly within the sound discretion of the trial court, and a denial of [an] opportunity for a rehearing for the purpose of

introducing additional evidence will not ordinarily be disturbed.' *Commonwealth v. Deitch Co.*, 449 Pa. 88, 295 A.2d 834 (1972). Such a ruling will be disturbed only if the court has abused its discretion. *Thomas v. Waters*, 350 Pa. 214, 38 A.2d 237 (1944).

*In re J.E.F.*, 487 Pa. 455, 458, 409 A.2d 1165, 1166 (1979).

This Court has previously found it proper to reopen a case to allow the introduction of additional evidence where the evidence has been omitted by accident, inadvertence, or even because of mistake as to its necessity (*Seaboard Container Corp. v. Rothschild*, 359 Pa. 51, 58 A.2d 800 (1948)), but not where the omission was intentional (*Ebersole v. Beistline*, 368 Pa. 12, 82 A.2d 11 (1951)). We have also stated that a case may be reopened where it is desirable that further testimony be taken in the interest of a more accurate adjudication (*Thomas v. Waters, supra; Massachusetts B & I Co. v. Johnston & Harder, Inc.*, 343 Pa. 270, 22 A.2d 709 (1941)) and where an honest purpose would be justly served without unfair disadvantage....

*In re J.E.F., supra,* 487 Pa. at 458–459, 409 A.2d at 1166. *See also Beneshunas v. Independence Life & Accident Ins. Co.*, 354 Pa.Super. 391, 512 A.2d 6 (1986).

The instant case meets the above criteria. The failure of the assistant district attorney to introduce the results of the blood tests into evidence stemmed from his inaccurate belief that there had been no stipulation to their admission, rather than from an intentional tactic. Moreover, counsel for the appellee permitted the district attorney to operate under this mistake when he said at trial that there had been no stipulation. (N.T. 9/11/86, p. 4). Additionally, the court itself recognized the necessity of the disputed information to the adjudication and its probable effect on the result. "Given that the plaintiff did not present sufficient evidence to overcome the presumption of legitimacy coupled with the failure to introduce non-exclusionary blood test results compelled the court to find for defendant." (Slip Op. at 3.)

It is the rule in paternity cases to have a blood test to aid in the resolution of those disputes, and it has been determined to be of such compelling interest to the child, the putative father and the state, *Streater, supra,* that, 42 U.S.C. § 655(a)(1) (1976 ed. and Supp. III) P.L. 93–647, commonly referred to as Title IV–D of the Social Security Act, permits reimbursement to the state of 75 per cent of funds expended on the operation of their approved child support plans, and regulations promulgated under authority of 42 U.S.C. § 1302, make clear that such federal financial participation is available for development of evidence regarding paternity, including the use of blood tests (45 C.F.R. § 304.20(b)(2)(i)(B) (1980)). In addition, Pennsylvania law permits a civil jury trial, pursuant to Pa.R.C.P. 1910.-28(b), if demanded by the defendant. Thus the defendant is given every protection and due process right under law to have the issue of paternity determined fairly. Under 42 Pa.C.S.A. § 6133, **Authority for test,** if the mother refuses to take the test, the court can enforce its Order requiring her to do so or resolve the issue against her. In most cases throughout the Commonwealth, stipulations are entered into for admission of the test results, particularly in bench trials, to avoid the additional cost of paying for expert testimony. It, therefore, became vital in this case to have the blood test admitted by stipulation *if it was available,* or to have the case continued to procure an expert. The trial judge should have been permitted to present those alternatives to the defendant at trial. The "inadvertance" or "misunderstanding" on the part of defense counsel prevented this from occurring. The court considered this evidence to be crucial, as he stated in his Opinion. Because it would have been desirable to reopen the case so that a more accurate adjudication could have been made, I would find the trial court abused its discretion in refusing to reopen the matter. No unfair disadvantage would have resulted to appellee since he had signed the stipulation and was aware of its existence.

It is within this Court's power to remand a case so that documents not properly before us can be considered by the

lower court. *Ritter v. Ritter,* 359 Pa.Super. 12, 19, 518 A.2d 319, 323 (1986). *See also* 42 Pa.C.S.A. § 607; *Anmuth v. Chagan,* 295 Pa.Super. 32, 440 A.2d 1208 (1982). I would, therefore, remand this case to the lower court so that it may be reopened and a determination made as to how the information contained in the blood test results and the stipulation as to admissibility would change the trial court's decision. Failure of the defendant to abide by the agreement would, of course, entitle the plaintiff to bring in an expert to qualify the blood test.

Appellant's last contention is that the lower court erred in applying the presumption of legitimacy under the instant facts.

It has been the law for centuries that there is a tremendously strong presumption that children are legitimate. *Cairgle v. American Radiator and Standard Sanitary Corp.,* 366 Pa. 249, 77 A.2d 439 (1951). The presumption can be overcome only by evidence of non-access of the husband, *id.,* or by exclusionary blood tests, 42 Pa.C.S. § 6137. *See Nixon v. Nixon,* 354 Pa.Super. 232, 511 A.2d 847 (1986).

In *Commonwealth ex rel. Johnson v. Peake,* 272 Pa.Super. 340, 415 A.2d 1228 (1979), we said:

> Where ... a married woman seeks to establish that someone other than her husband fathered the child for whom support is sought, she must overcome a presumption that the child is legitimate.... In order to successfully rebut the presumption of legitimacy, the evidence of non-access or lack of sexual intercourse must be clear, direct, convincing and unanswerable ..., although it is not necessary that the possibility of access be completely excluded.

*Id.,* 272 Pa.Superior Ct. at 343, 415 A.2d at 1230 (citations omitted). This Court, in *Commonwealth ex rel. Spangler v. Spangler,* 283 Pa.Super. 190, 423 A.2d 1053 (1980), recognized "the presumption of legitimacy in any given case might be more or less decisive when all of the facts are examined." *Id.,* 283 Pa.Superior Ct. at 192, 423 A.2d at

1054. In that case we determined that the preponderance of credible testimony that there was access and sexual relations between husband and wife during the period of time when the child was conceived, plus the presumption, supported a finding of legitimacy.

In *Connell v. Connell,* 329 Pa.Super. 1, 477 A.2d 872 (1984), an ex-husband appealed from a determination of support and a finding of paternity. The child in that case was born during the parties' marriage while they were living together. We said a strong presumption of legitimacy arose under those circumstances. *Id.,* 329 Pa.Superior Ct. at 1, 477 A.2d at 872.

The case of *Commonwealth ex rel. Savruk v. Derby,* 235 Pa.Super. 560, 344 A.2d 624 (1975), however, involved a situation much like the instant one in that the mother of a child brought action against a man, not her husband, for support of a child. The woman had separated from her husband in 1966. Sometime in 1967 she took up residence with the putative father and lived with him through 1970. Around the end of 1968, she became pregnant and bore the child on July 30, 1969. The woman's divorce became final in February of 1970. At some time in May, 1970, the putative father disclaimed paternity of the child and demanded that the woman leave his house. He refused to provide any additional support for the child. The *Savruk* court held there was sufficient evidence, based on the woman's testimony, to sustain the lower court's findings of non-access of the husband and of paternity of the putative father. *Savruk, supra,* 235 Pa.Superior Ct. at 7, 344 A.2d at 627. *See also Johnson, supra.*

In the case at hand, the lower court could have found non-access based on appellant's testimony alone. This taken together with the blood test results might have justified a finding that appellant had successfully rebutted the presumption of legitimacy. Thus the blood test became crucial in determining the weight and sufficiency of the evidence as to rebuttal of the presumption of legitimacy.

I would, accordingly, remand this case to the trial court to make a determination as to paternity and support in accordance with this Dissenting Opinion.